**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**CLARENCE V. PARKS**                                                    **PLAINTIFF**

**VERSUS**                                             **CAUSE NO.** 1:25-cv-19-SA-RP

**CITY OF STARKVILLE, MISSISSIPPI,
LYNN SPRUILL, NAVARRETE ASHFORD,
AND X, Y, AND Z**                                                      **DEFENDANTS**

**JURY TRIAL DEMANDED**

---

**COMPLAINT**

---

This is an action to recover actual and punitive damages for violations of federal constitutional rights. Supplemental state law claims are also made. The following facts support this action:

1.

Plaintiff CLARENCE V. PARKS is an adult black resident citizen of Madison County, Mississippi.

2.

Defendant CITY OF STARKVILLE, MISSISSIPPI is a political subdivision of the State of Mississippi. Defendant City may served with process through its mayor, Lynn Spruill, at 110 West Main Street, Starkville, Mississippi 39759. The City of Starkville, Mississippi made the official policy decisions at issue in this case through its Mayor and Chief Operating Officer, who were the

official policymakers of the City of Starkville with respect to the decision of whether to bring a criminal prosecution.

Defendant LYNN SPRUILL is an adult resident citizen of Mississippi. Defendant Spruill may be served with process at 110 West Main Street, Starkville, Mississippi 39759. At all relevant times, Defendant Spruill was the Mayor of the City of Starkville, Mississippi.

Defendant NAVARRETE ASHFORD is an adult resident citizen of Mississippi. Defendant Ashford may be served with process at 110 West Main Street, Starkville, Mississippi 39759. At all relevant times, Defendant Ashford was the Chief Operating Offer and Director of Human Resources of the City of Starkville, Mississippi.

Defendants X, Y, and Z are Starkville firefighters who were upset with Plaintiff's obtaining the position of training chief and wanted one of their own to have the job. They are designated as "X, Y, and Z" so as not to make any error in exactly which firefighters participated in the acts to be described in this Complaint. Their true identities will be learned during discovery, and their true names substituted for the names "X, Y, and Z."

3.

This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343, for a cause of action authorized by 42 U.S.C. § 1983. Plaintiff's claims are made under 42 U.S.C. § 1981 and under the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. All Defendants acted under color of state law, and all individual Defendants are sued in their individual capacities.

4.

Plaintiff has a distinguished career as a firefighter. Plaintiff has served in multiple firefighting positions throughout Mississippi, and his prior service includes being a Fire Chief in Crystal Springs, Mississippi, and includes being a senior instructor at the Mississippi at the Fire Academy in Pearl, Mississippi. Plaintiff has also been a national level competitor in the Firefighter Combat Challenge Competition, which measures the physical fitness and firefighting capabilities of firefighters throughout the nation.

5.

While competing in Firefighter Combat Challenge Competitions, Plaintiff became friends with a female firefighter, Savannah Sanchez. Sanchez has extraordinary physical abilities and has extraordinary academic abilities, having obtained her Master's Degree in a fire-related field. Sanchez and Plaintiff share the ambition to rise to the top of the firefighting profession.

6.

In the summer of 2017, the position of Chief Training Officer of the Starkville Fire Department became vacant. The position of Training Chief is a prestigious position. Training chiefs are often promoted to fire chief positions. Plaintiff had the ambition of becoming a fire chief for a large municipality. Obtaining this Training Chief position was important to Plaintiff for that reason. Additionally, Plaintiff believed that he could make strong improvements to training at the Starkville Fire Department.

7.

Plaintiff was opposed in obtaining the position of Training Chief by several current white Starkville firefighters, Defendants X, Y, and Z. These white firefighters did not want Plaintiff to

have the Training Chief position. They wanted one of their own to have the position of Training Chief. The white firefighters opposed Plaintiff because of his race (black), especially since the City already had a black fire chief.

8.

Effective July 2017, the hiring committee voted to select Plaintiff as the Training Chief over less qualified white applicants, to the dismay of the white applicants, Defendants X, Y, and Z.

9.

The animosity of the white firefighters because of Plaintiff's obtaining the position of Training Chief was demonstrated by several of the local firefighters failing to cooperate with him. One of them even walked out of a training class.

10.

As Training Chief, Plaintiff was issued a 2012 Ford Crown Victoria. No one gave Plaintiff any guidance as to what use he could make of the vehicle, whether it was additional compensation such that it could freely be used for personal use or whether use was restricted. The City of Starkville's handbook, which was in effect at the time, did not warn against personal use, and made only vague references regarding the use of a City vehicle, including such unhelpful directives as to "utilize common sense" and to operate the vehicle in a "safe and courteous manner." *See* City of Starkville Personnel Manual (Rev. Nov. 2, 2021), p. 41, attached hereto as Exhibit "A." At no point did the City of Starkville's policies, in effect when Plaintiff was hired or at any time before he was indicted, give any notice that personal use of the vehicle was prohibited. *See* Exhibit "A." Further, Plaintiff was given no guidance from any Starkville official as to what use was appropriate.

-4-

11.

Plaintiff specifically asked the Fire Chief about utilizing the City vehicle for fire-related trips located outside the City of Starkville. The Fire Chief gave his permission for such trips, and Plaintiff often used the City vehicle for fire-related training trips outside the City of Starkville. On those occasions when the Fire Chief was accessible, Plaintiff informed the Fire Chief that he was leaving on such trips and on each occasion the trips would be approved. Plaintiff took frequent trips on fire-related business outside the City of Starkville, and these trips were for the benefit of the City of Starkville by creating a spirit of cooperation between the Starkville Fire Department and other fire departments, and by allowing Plaintiff to provide training sessions for Starkville firefighters, who were undergoing special training at the Fire Academy in Pearl, Mississippi.

12.

Additionally, and significantly to this case, Plaintiff occasionally stopped at Sanchez's home in Louisville, Mississippi, both while going to and returning from firefighting-related trips and occasionally by driving to her home during the noon hour. No one had ever informed Plaintiff that such trips were prohibited, and Plaintiff did not attempt to hide the occasional times when he stopped at Sanchez's home. It was bad judgment to do so because of the jealousy and racial animosity which Defendants X, Y, and Z held against Plaintiff, which should have alerted him to the likelihood that they would use some excuse to discredit him. When Plaintiff stopped at the Sanchez home, Plaintiff worked on such matters with Sanchez as the firefighter policies, preparation of curriculums, and his studying for his master's degree in a firefighting-related field.

13.

At times which Plaintiff does not know, the biased firefighters, Defendants X, Y, and/or Z, claimed to Defendant Ashford and/or Defendant Spruill that Plaintiff was utilizing the City vehicle for personal purposes. Upon information and belief, they communicated other false, derogatory information about Plaintiff. Their purpose was to maliciously interfere with Plaintiff's employment and displace him as Training Chief.

14.

In February 2022, Defendant Ashford informed the Starkville Fire Chief Yarbrough that Defendant Spruill had reported to him that an "anonymous" person had told the Mayor that Plaintiff was making improper use of the City vehicle. Given the animosity of Defendants X, Y, and Z, the real source of the anonymous information was the racist and malicious motives of Defendants X, Y, and Z. Plaintiff does not know which of the firefighters forwarded the misinformation to Defendant Ashford and, therefore, does not know the identities of Defendants X, Y, and Z. When Plaintiff learns the identities of Defendants X, Y, and Z, he requests to amend this Complaint to substitute their actual names.

15.

In April 2022, Defendant Ashford, at the request of the biased white firefighters, Defendants X, Y, and Z, again approached Fire Chief Yarbrough, claiming new information about Plaintiff's improper use of the vehicle.

16.

Following the April 2022 visit with Fire Chief Yarbrough, Defendant Ashford, with the consent and/or direction of Defendant Spruill, "investigated" Plaintiff's use of the City vehicle.

Neither Defendant Ashford, Defendant Spruill, or Fire Chief Yarbrough ever warned Plaintiff that he was suspected of wrongdoing, or that his use of the City vehicle contravened policies, or that such use was illegal. Further, no Defendant conferred with the office of the Mississippi State Auditor, which is the state office charged by law with determining misuse of City property, and which was in the best position to know whether Plaintiff's use of the vehicle was illegal. Instead, Defendants misused City resources to perform their own criminal investigation which would have cost Defendant City nothing if they had reported the claims to the Mississippi State Auditor.

17.

Contrary to Defendant Ashford's claim, that Plaintiff made "hundreds" of personal trips, the Starkville Police Department determined that only a few trips could be classified as personal, those being the trivial number of trips to Sanchez's home. Nevertheless, Defendants Spruill and Ashford caused the claims against Plaintiff to be presented the District Attorney for presentation to the Oktibbeha County Grand Jury. No Defendant ever informed the Starkville Police Department or the District Attorney about the underlying ill-will which motivated the investigation against Plaintiff. No Defendant ever explained to the Starkville Police Department or the District Attorney that there were, in fact, no policies which prohibited Plaintiff's using the vehicle for personal use. They also failed to explain to the District Attorney and Grand Jury that Plaintiff frequently worked through his lunch hour and sometimes worked off the clock after his shift ended. They failed to explain that Plaintiff had saved the City money with his training policies, including training Starkville firefighters in Starkville, saving the expense of traveling to Pearl. In short, they failed to explain the clear fact that there could not have been any criminal intent attributed to the use of the vehicle for personal purposes, even if Starkville had a policy against use for personal purposes. Indeed, other than

checking records, neither Defendant Ashford or Defendant Spruill made any investigation of the underlying facts before initiating the criminal case against Plaintiff.

18.

Based upon incomplete information, and not knowing there was no actual policy prohibiting Plaintiff's use of the City vehicle for personal use, and not knowing the malicious motives that lay behind the Defendants' actions, on September 16, 2022, the Oktibbeha County Grand Judy returned an Indictment, attached hereto as Exhibit "B." In order to avoid being fired, and as a result of the malicious actions of all Defendants, Plaintiff resigned from his employment. This was not a voluntary resignation but was a constructive discharge made in order to avoid being fired which would have dramatically diminished the chances of success of Plaintiff in obtaining other employment. The resignation was forced by Defendants.

19.

After the Indictment was returned, Defendant Spruill exerted continuing pressure upon the District Attorney to bring the matter to trial. Defendants Spruill and Ashford informed the District Attorney that they wanted the "maximum" sentence against Plaintiff.

20.

The criminal case against Plaintiff alleged in the Indictment, Exhibit "B," did not go to trial until October 28, 2024.

21.

Although the amounts of personal use were trivial, a conviction would have disqualified Plaintiff from working in his chosen and invaluable career, a firefighter, and would have subjected him to a term of imprisonment to be set at the discretion of the circuit court judge.

-8-

22.

A few days before the trial was set to begin, Defendant Ashford, realizing that there was, in fact, no existing City policy which prohibited use of the City vehicle for personal purposes, fabricated a new policy and sent it to the Assistant District Attorney prosecuting the case. The new fake policy, fraudulently created by Defendant Ashford, specifically made it contrary to City policy to use a City vehicle for personal purposes. A copy of the new policy fabricated by Defendant Ashford is attached hereto as Exhibit "C." Defendant Ashford misrepresented to the Assistant District Attorney prosecuting the case that the fake policy was the real policy, and that the earlier policy that he also furnished was a "mistake."

23.

Relying upon Defendant Ashford's misrepresentations, that the policy given Plaintiff was authentic, the trial proceeded before an Oktibbeha County jury. This fake policy contains the correct first page, representing the City of Starkville's actual policy at the relevant time. The newly created policy then adds a fake second page, which states that personal use is prohibited and states:

> Vehicles owned by the City of Starkville, Mississippi and assigned to the department will be used for official business purposes only. Mississippi General Statutes prohibit the use of Starkville, Mississippi owned vehicles for personal reasons.

Exhibit "C."

24.

The fabrication of evidence by Defendant Ashford was apparent since it was not contained in the City handbook from which Defendant Ashford claimed to be the policy. Accordingly, Plaintiff was found not guilty by a jury. The Order of Acquittal is attached hereto as Exhibit "D."

25.

Although Plaintiff was acquitted, the extended criminal proceedings against him has caused him mental anxiety, worry from the danger of losing his employment as a firefighter, harm to his reputation, and substantial attorneys' fees and costs.

26.

Defendants are liable to Plaintiff based on the following legal theories:

**Count I:      Violation of the Due Process Clause of the Fourteenth Amendment by Defendant Ashford in Fabricating Evidence.**

The Due Process Clause of the Fourteenth Amendment prohibits arbitrary governmental action.   Arbitrary governmental action includes fabrication of evidence.   Defendant Ashford fabricated a City policy, which falsely claims that the City of Starkville had a policy against personal use of City vehicles.  Defendant Ashford, knowing that Defendant Spruill wanted Plaintiff convicted, engaged in arbitrary governmental action in violation of the Fourteenth Amendment of the United States Constitution by fabricating evidence and furnishing such fabricated evidence to the Assistant District Attorney knowing the fabricated evidence would be used in an attempt to convict Plaintiff.

Providing the District Attorney's office with fabricated evidence, or any evidence at all, is not one of the discretionary duties of a Human Resources Director or Chief Operating Officer. Because this was not within the scope of Defendant Ashford's job duties, no qualified immunity defense exists.  Further, use of fabricated evidence in order to obtain a conviction violates settled law.  Any defense used to delay this case by invoking qualified immunity would be frivolous and warrant the imposition of sanctions.

27.

**Count II:      State Law Malicious Prosecution by Defendants Ashford and Spruill.**

Defendants Spruill and Ashford maliciously initiated Plaintiff's arrest and prosecution in violation of Mississippi state law.  There was no probable cause for the prosecution.

28.

There was malice in instituting the criminal proceedings.  This malice consisted, among other things, of the desire of Defendants to carry out the scheme by Starkville firefighters to discredit Plaintiff.  Defendant Spruill also demonstrated malice by suspending the fire chief from his employment simply because he was Plaintiff's supervisor.  Defendant Spruill had no evidence that the fire chief had done anything wrong, but he had announced that he running against Defendant Spruill for mayor.  Defendant Ashford further demonstrated malice by fabricating evidence.

29.

There was no probable cause for the proceeding because settled principles of criminal law require a criminal intent, and there could be no criminal intent absent evidence that there was some notice to Plaintiff that his use of the City vehicle was a crime or, at least, notice that his use of the City vehicle for personal use was prohibited.

30.

The prosecution ended in Plaintiff's favor with a not guilty verdict.

31.

Plaintiff has suffered damages since he has suffered damages to reputation, mental anxiety and stress, and incurred attorneys' fees and costs.  The actions of Defendants, especially the fabrication of evidence, are outrageous, such that punitive damages are due.

32.

**Count III:      Malicious Prosecution by Defendant City of Starkville.**

Defendant City of Starkville, as a result of its official policymaking decisions of the policymaking officers (the Mayor and Chief Operations Officer of the City of Starkville), caused Plaintiff to be maliciously prosecuted in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  The elements of malicious prosecution under federal law against the City of Starkville are the same as the elements of malicious prosecution under state law as alleged in Count II of the indictment.  Accordingly, the elements of malicious prosecution alleged in Count II are hereby incorporated into Count III.  Further, the prosecution was the official policy decision of the City of Starkville because the Mayor and the Chief Operations Officer were delegated by state law with official policymaking authority making executive decisions for the City of Starkville, including, but not limited to, the decision about whether to prosecute for a crime.

33.

**Count IV:  Malicious Interference with Plaintiff's Employment by Defendants X, Y, and Z.**

Defendants X, Y, and Z maliciously interfered with Plaintiff's employment by causing Plaintiff to be forced to resign his employment so that one of them could become the Training Chief. The elements of malicious interference are all present, to wit:  Defendants' actions in  interfering with Plaintiff's future employment were intentional and willful and not in good faith; Defendants' actions were calculated to cause Plaintiff damages; and Defendants' actions were done for the unlawful purpose of causing Plaintiff damage and loss without right or justifiable cause.  Malice is indicated by the racial and jealousy-motivated actions of Defendants X, Y, and Z.

**Count V: Violation of Plaintiff's Civil Rights by Defendants X, Y, and Z.**

Defendants X, Y, and Z, scheming to be rid of Plaintiff because of his race, deprived Plaintiff

of his right to contract on the same basis as white persons in violation of 42 U.S.C. § 1981.

## REQUEST FOR RELIEF

Plaintiff requests actual and punitive damages against individual Defendants for violating

Plaintiff's federal due process rights, and actual damages against Defendant City of Starkville,

Mississippi, and for reasonable attorneys' fees and costs.

RESPECTFULLY SUBMITTED, this the 6th day of February, 2024.

CLARENCE V. Plaintiff, Plaintiff

By: _/s/ JIM WAIDE_
Jim Waide, MS Bar No. 6857
waide@waidelaw.com
Rachel Pierce Waide, MS Bar No. 100420
rpierce@waidelaw.com
WAIDE & ASSOCIATES, P.A.
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEYS FOR PLAINTIFF

-13-